IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PPD ENTERPRISES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:16-CV-00507 |
| | § | **Jury Trial Demanded** |
| STRYKER CORPORATION et al. | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR PROTECTION AND MOTION FOR SANCTIONS

Defendants Stryker Corporation, MAKO Surgical Corp., Howmedica Osteonics Corp. and Stryker Sales Corporation (collectively "Stryker" or "Defendants"), file this Motion for Protection and Motion for Sanctions.

## I.     INTRODUCTION

Defendants move this Court for a Protective Order that will protect from public disclosure the confidential information that Defendants previously produced as "Confidential" and/or "Attorney's Eyes Only" pursuant to the parties' Agreed Protective Order that the Court entered on September 22, 2016.  This Motion has been made necessary by PPD's counsel's unreasonable and unprecedented blanket request that none of Defendants' over 60,000 documents should have any confidentiality designation.  Specifically, Defendants seek a protective order protecting from public disclosure certain exhibits utilized during the deposition of Dr. Alan Freedhand and Dr. Freedhand's testimony regarding same.

38943149v.2

Defendants also seek a protective order protecting from public disclosure those documents marked Confidential or Attorney's Eyes Only and produced in response to the Court's February 24, 2017 order among the documents produced by Defendants at STRPPD00000982-00062936.

It is undisputed that the Plaintiff and the Defendants are competitors.   In this suit, PPD has sought and Defendants produced confidential and proprietary information of Defendants, including highly sensitive consultant and/or development agreements (and payments related to same), communications with consultants and customers, marketing strategies, business plans, pricing information, customer relationships, customer lists, training materials, growth analysis, HPP performance tracking, project development, case lists, surgical observations, clinical research, instrumentation plans, product comparisons, and personnel information related to employees.

As a matter of federal law and as described through the supporting declarations, the documents at issue in this motion are confidential and in some cases contain highly sensitive information requiring an Attorney's Eyes Only Designation.  Consequently, sufficient good cause exists to grant Defendants' Motion for Protective Order, thus maintaining the confidentiality of documents entitled to protection as a matter of law.

Finally, PPD should be sanctioned for this unprecedented exercise wasting time and resources, and for its abuse of the discovery process.

38943149v.2

## II.     FACTUAL BACKGROUND

### A.     The parties are competitors.

PPD Enterprises LLC, ("PPD") is a "distributor of medical products and devices, including Corin USA, a competitor of Stryker."  Dkt. 1, ¶12.  Its sole member is Angie Domingues.  Dkt. 7.  Previously, PPD was a sales representative for MAKO, the manufacturer of various implant devices including the MAKO RESTORIS.   In October 2014, MAKO terminated its Sales Representative Agreement, (the "Agreement"), with PPD Enterprises LLC, ("PPD"), "due to PPD's ongoing incurable breaches of various terms, conditions and covenants contained in the Agreement."

Howmedica Osteonics Corp. (d/b/a Stryker Orthopaedics) is a global leader in the development, manufacture, and sale of orthopaedic implants, instruments, and other orthopaedic products and services.   Stryker's reconstructive orthopedic products are used for the surgical replacement of hips, knees, and shoulder and elbow systems. Orthopedic trauma products are used for the surgical treatment of bone fractures, abnormalities and diseases of the hands, arms, hips, pelvis, legs, ankles, and feet.[1]

MAKO Surgical Corporation pioneered the advancement of robotic- arm assisted surgery in orthopaedics.   Stryker's Mako robotic-arm assisted reconstructive surgery is transforming orthopaedics, combining Stryker's market-leading implants with Mako's proprietary robotic-arm technology.[2]

---

[1] Declaration of Lauren Venekas (Ex. A) at 1-2.
[2] *Id.* at 2.

PPD is a distributer for Corin USA, among other companies.  Corin is also engaged in the development, production and distribution of a wide range of reconstructive orthopaedic devices.  Corin also works with orthopaedic surgeons to develop and test its products.  As such, Stryker and PPD are selling to the same customer-market and are competitors.

**B.      Defendants' business is highly competitive and Defendants go to great lengths to keep proprietary information confidential.**

The business in which Stryker is engaged is extremely competitive and the materials and information that Stryker's employees, consultants and even third party suppliers may have access to regarding Stryker's technologies, know-how, products, services and sales are proprietary and confidential to Stryker.[3]  At all relevant times, Stryker has gone to great lengths to protect its confidential and proprietary information.

For example, Stryker's own **Code of Conduct** provides:

> Confidential information: No employee or director will use, for his or her own personal gain, or disclose to any third party, any confidential or proprietary information that he or she obtained as a result of his or her employment with or relationship to the company. Confidential or proprietary information includes all non-public information that might be of use to competitors or harmful to the company and its customers if disclosed. No employee or director will buy, sell, or deal in the company's stock based on non-public information.[4]

---

[3] Ex. A at 2-3.
[4] Ex. A at 3; see also Stryker Code of Conduct and Corporate Policy No. 7 (Ex. E).

Like most companies, Stryker maintains a variety of electronic and other business systems, and Stryker's Corporate Policy governing electronic and other business systems further requires strict protection of confidential and non-public information contained therein.[5] These systems are the property of Stryker and are provided to employees to assist them in the conduct of the company's business.[6] Employees are required to properly use and protect from unintentional disclosure and unauthorized access all such systems and all documents, files, back-up copies, communications, images and recordings created on, handled by, or stored through these systems.[7] Employees are not permitted to access or attempt to access another employee's electronic communications, voice communications or messages, or computer files without the other employee's permission or permission from the employee's supervisor.[8] An employee is not permitted to share her/his password or logon credentials unless expressly permitted by applicable local IT department's written policies or keep it in an unprotected manner that would allow an unauthorized person access. Employees are not permitted to attempt to access, use or tamper with any confidential or personal information that is maintained upon the company's system unless they have a business authorization to do so.[9]

Stryker also maintains non-compete agreements with its employees and consultants, prohibiting those individuals from working as an employee, consultant,

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 3-4.
[8] *Id.*
[9] *Id.* at 4.

38943149v.2

contractor, agent, or otherwise for, or rendering services directly or indirectly to, any Conflicting Organization in which the services an employee may provide could enhance the use or marketability of a Conflicting Product or Service by application of Confidential Information which the employee has access to during employment. [10]

Angie Domingues' husband, Brain Domingues, was employed by Stryker from February, 2006 until July, 2014, when he resigned.[11] Like any other Stryker employee,  Mr. Domingues had agreed to and was bound by Stryker's Code of Conduct governing Stryker's Confidential Information.[12]

Mr. Domingues also executed and was bound by an Employee Non-Compete, Confidentiality and Fair Competition Agreement.[13]  In that agreement, Mr. Domingues agreed to abide by Stryker's Code of Conduct and he acknowledged and agreed that Strykers' business operations, administrative and training processes and procedures, pricing, formula, manufacturing processes, research and development programs, analysis of competitive products, sales and marketing strategies and customers, including customer lists, information concerning specialized product development, and customers (including but not limited to customer lists, pricing information, product information, analytical results of competitive product comparisons, customer marketing data and purchasing patterns, applicable discount codes, and planned research and development for its customer base in the

---

[10] *Id.*
[11] *Id.* at 5-6.
[12] *Id.*
[13] *Id.*

Sales and Marketing Region) were confidential and proprietary.  *Id.*  In doing so, Mr. Domingues recognized and agreed that, if used in competition with Stryker, this information would render "great and irreparable harm to Stryker."[14]

Stryker has, at all relevant times, also required confidentiality agreements with its sales representatives, consultants, and suppliers, including PPD, Mark Ortmann and Dr. Adam Freedhand.

Mark Ortmann was and still is a PPD Sales Representative.[15]  Prior to his time with PPD, Mr. Ortmann was employed by Stryker and he entered into a non-disclosure agreement.[16]

Under this agreement, Mr. Ortmann recognized the confidential and proprietary nature of Stryker's business and agreed to maintain the confidentiality of Stryker's information.  Mr. Ortmann's agreement provides:

> 1.1   The business in which Stryker is engaged is extremely competitive and that during my employment with Stryker I have received and will receive and have access to materials and information regarding Stryker's technologies, know-how, products, services and sales that are proprietary and confidential to Stryker. I recognize that these materials and information are an important and valuable asset to Stryker and that Stryker has a legitimate interest in protecting the confidential and proprietary nature of these materials and information.
>
> 2.2   "Confidential Information" means know-bow, trade secrets, and technical, business and financial information and any other non-public information in any way learned by me dining my employment with

---

[14] *Id.* at 6-7; *see also* B. Domingues Employee Non-Compete, Confidentiality and Fair Competition Agreement, STRPPD00000278-00000288 (CONFIDENTIAL) (Ex. F) at 6-7 (submitted *in camera* to the Court).
[15] *Id.* at 7.
[16] *See* Ortmann/Stryker Non-Disclosure Agreement, STRPPD000347-000354 (CONFIDENTIAL) (Ex. G) at 3-4 (submitted *in camera* to the Court).

38943149v.2

Stryker, including, but not limited to (a) prices, renewal dates and other detailed terms of customer or supplier contracts and proposals; (b) information concerning Stryker's customers, clients, referral sources and vendors, and potential customers, clients, referral sources and vendors, including, but not limited to, names of these entities or their employees or representatives, preferences, needs or requirements, purchasing or sales histories, or other customer or client-specific information; (c) supplier and distributor lists; (d) pricing policies, methods of delivering services and products, and marketing and sales plans or strategies; (a) products, product Imow-how, product technology and product development strategies and plans; (r) employees, personnel or payroll records or information; (g) forecasts, budgets and other non-public financial information; (h) expansion plans, management policies and other business strategies; (i) inventions, research, development, manufacturing, purchasing, finance processes, technologies, machines, computer software, computer hardware, automated systems, engineering, marketing, merchandising, and selling. [17]

The Sales Representative Agreement between PPD and MAKO likewise includes an agreement by PPD not to disclose Defendant's confidential information.[18]

Stryker also works in partnership with orthopaedic surgeons and other healthcare professionals to develop and test Stryker's products and technologies through consulting and development agreements. These agreements include descriptions and discussions of next generation products, trade secrets, software innovations and proprietary and confidential business strategy.

Dr. Adam Freedhand has worked as a consultant and developer with both MAKO and Stryker Orthopaedics since April, 2010.[19]   Under Dr. Freedhand's

---

[17] *Id.*

[18] Ex. A at 7; MAKO-PPD Sales Representative Agreement (Ex. H) (PPD007-PPS0061) at 7-8 (submitted *in camera* to the Court).

consulting/development agreements, Dr. Freedhand agreed to serve as a contracted developer for Stryker Orthopaedics.[20]  In doing so, Dr. Freedhand agreed, during all relevant times, to abide by Stryker's Code of Conduct and to keep Stryker's Confidential Information in confidence and not disclose such information to any third party and to use Stryker's Confidential Information only for the purpose of carrying out his work and services under his Consulting/Development Agreements with Stryker.[21]

Stryker's business is so competitive and its information so sensitive that Stryker also requires agreements from its third party suppliers to protect Stryker's Confidential Information disclosed in the course of the supplier's relationship with Stryker.[22]  Similar to Stryker's consultants and sales representatives, Suppliers must also represent and warrant that they have read and agree to abide by Stryker's Code of Conduct, including the confidentiality provisions described above.[23]

## C.     The Court entered an Agreed Protective Order September 22, 2016.

On September 22, 2016, the Court entered an Agreed Protective Order "to protect Confidential Information which will be produced by the parties."  Dkt. 34-1. Under the Agreed Protective Order, "all confidential information produced or exchanged in the course of litigation between Plaintiff and Defendants shall be used solely for the purpose of this litigation…"  Dkt. 34-1 ¶ 1.     Under the Agreed

---

[19] Ex. A at 2.
[20] *Id.*
[21] *Id.* at 8.
[22] Ex. A at 8.
[23] *Id.*

Protective Order any party may designate documents and information it produces in the course of this litigation as "Confidential Information" within the meaning of the Agreed Protective Order.  Dkt. 34-1¶9.

The Agreed Protective Order defines "Confidential Information" as "documentation relating to or containing any descriptions, discussions or mention of any next generation products, research and development information, trade secrets, patent-license agreements, or information that was generated in connection with, or which reveals the content of patent-licensing negotiations, information regarding software offerings that a party has treated as confidential and is not subject to public disclosure, technical information such as product design and manufacturing techniques or processing information, software innovations, computer code, formulae, proprietary and confidential business strategy, forecasts, business development, customer lists, marketing, sales, costs, pricing and/or profit information, staffing, personal data, salary information, benefit information, or information provided by customers, consultants or other third parties which is subject to confidentiality agreements or any other information deemed as such by the Court in this case."  Dkt. 34-1¶2.

To the extent a producing party in good faith believes that a document contains highly sensitive business or commercial Confidential Information, the producing party may designate confidential documents as ATTORNEYS EYES ONLY. Dkt. 34-1¶2.

Disclosure of Confidential Information is limited to Qualified Persons, defined to include Plaintiff (including Angie Domingues, Brian Domingues and Mark Ortmann), Defendants and their owners and employees, counsel, staff, expert witnesses, the Court, and the trier of fact.   Dkt. 34-1¶5.   The parties are also permitted to use Confidential Information during depositions, provided that the witness (if not a Qualified Person) is a creator, sender or recipient of the Confidential Information; or provided that, prior to disclosure, the witness agrees to be bound by the Agreed Protective Order and executes the certification attached thereto.  Dkt. 34-1¶12.

Disclosure of ATTORNEYS EYES ONLY Confidential Information is restricted to Plaintiff (Angie and Briin Domingues), their counsel, counsel staff, expert witnesses, the Court and the trier of fact.  Dkt. 34-1¶6.

Notably, parties designating information as Confidential or Attorney's Eyes Only are required to produce both redacted and non-redacted versions of the confidential information. Dkt. 34-1¶3. The Agreed Protective Order provides that "Confidential Information may be offered as an exhibit at trial, or attached to any motions filed during the course of this litigation; however, when filing motions, the parties will file the redacted version as provided by the producing party of any document containing Confidential Information.  *Id.*   To the extent a non-redacted version is necessary for the Court's consideration of the motion, the utilizing party is to provide a non-redacted version to the Court in camera and the producing party

bears the burden of filing a motion to seal allowing the utilizing party to file the non-redacted version under seal.  *Id.*

Relevant to this dispute, the Agreed Protective Order also articulates the steps that the parties must take to challenge a producing parties Confidential Information designation.  The Agreed Protective Order provides that "Any party may request that a designating party rescind a Confidential Information designation, and such requests shall not be rejected absent a good faith determination by the designating party that the Confidential Information is entitled to protection."  Dkt. 34-1¶15.  If a challenge is made; however, the Agreed Protective Order requires "a good faith effort to resolve any disputes regarding whether any designated materials constitute Confidential Information or AEO."  Dkt. 34-1¶16.

**D.    Stryker's production of confidential and proprietary information pursuant to the Court's 2/28/17 Order**

PPD's first set of Requests for Production contained 54 separate requests. PPD's discovery requests sought a wide range of commercially sensitive, proprietary and confidential information concerning Defendants' relationships with its customers including physicians and other healthcare providers and hospital systems with regard to sales and distribution of MAKO and Stryker Orthopaedics products, as well as documents relating to agreements for research and development of new products and services.

On February 28, 2017, the Court narrowed the scope and time period of PPD's requests, and ordered Stryker (the "Court's Order") to produce responsive

documents on or before March 24, 2017.   Stryker has produced over 60,000 pages of documents, including the documents produced at Bates range STRPPD00000982-00062936 in response to the Court's Order.

In response to the Court's 2.28.17 Order, Defendants have produced by email through a secure site the following documents:

3.24.17    Freedhand's consulting file and Freedhand payments between 1.1.12 - 12.31.16, summaries of cases performed by Freedhand, MAKO cases and MAKO robot sales in PPD's Territory and MAKO robot sales invoices (STRPPD00000966 - STRPPD00001832)

3.26.17    Additional documents (including emails by custodian, spreadsheets, etc.) to, from, or related to PPD, Freedhand, including Freedhand's consulting file, MAKO weekly reports, MAKO sales information,  as well as documents responsive to other requests addressed by the Court's 2.28.17 Order (STRPPD00001833 - STRPPD0061301)

3.27.17    Additional    documents    from    Freedhand's    consulting    file (STRPPD00001519 - STRPPD00001690) (inadvertently not in 3.24.17 production plus Natives of 3.26.17 production)

4.14.17    Additional    documents    from    Freedhand's    consulting    file STRPPD000061302 - STRPPD000062006

4.19.17    Additional documents from Freedhand's consulting file, including Freedhand surgical observations, Freedhand 1099s as well as Kreuzer surgical observations (STRPPD00062007-STRPPD00062916) Exhibit A.

4.21.17    Additional documents from Freedhand's consulting file re: 2011-2012 (STRPPD00062917-STRPPD00062936)[24]

The **Verified Appendix to Exhibit B** also describes in greater detail the nature of the documents produced at Bates range STRPPD00000982-00062936.

---

[24] *See* Declaration of Karen Hassevoort (Ex. B) at App'x B.

As discussed below, Plaintiff wrongfully and unreasonably made a blanket challenge to documents produced by Defendants at bates range STRPPD00000982-00062936 and designated CONFIDENTIAL/ATTORNEY'S EYES ONLY.

These documents contain information regarding Stryker's sales figures by customer and Sales Representative; highly specific information on Stryker's customers, including their background, their interests, their needs and Stryker's efforts in addressing them; business plans; sales and marketing strategies, customer relationship information; product and sales information and research and development information. The information contained in these documents is the type of information that Stryker considers to be its highly confidential and proprietary information which would give a competitor an advantage to compete against Stryker, would cause irreparable harm to Stryker if disclosed publicly and should not be disclosed outside of this litigation.

Accordingly, Stryker produced non-redacted and redacted versions of the records to Plaintiff in this litigation and such information was marked as "CONFIDENTIAL" and in some cases "ATTORNEY'S EYES ONLY".

**E.     The Deposition of Dr. Freedhand.**

Dr. Freedhand, a Stryker consultant, was deposed by the Plaintiff on April 21, 2017. During the deposition, Plaintiff marked as Exhibits numerous documents designated by Defendants as CONFIDENTIAL/ATTORNEY'S EYES ONLY. Plaintiff also questioned Dr. Freedhand regarding these exhibits, eliciting testimony from Dr.

14

Freehand about Defendant's confidential business operations and processes. Pursuant to the Agreed Protective Order, counsel for Defendants designated Dr. Freehand's testimony Confidential Information.[25]

**F.     Defendants' meet and confer efforts and Plaintiff's outright refusal to attempt same.**

On April 24, 2017, counsel for Plaintiff, Jessica Hallmark, emailed counsel for Defendants and without any support, merit, or specificity demanded that Defendants remove the confidential and AEO designations from all of Dr. Freehand's deposition exhibits, Freehand's deposition testimony and documents produced at Bates range STRPPD00000982-00062936.[26]  Ms. Hallmark's email states:

> Please remove your confidential and attorneys eyes only designation of the documents and deposition for which Plaintiff is challenging.  Please be advised that Plaintiff challenges Defendants designation of Dr. Freehand's deposition, as well as the exhibits attached to same, as confidential.  Furthermore, Plaintiff challenges Defendants confidential designation of Defendants' documents bates labeled STRPPD00000982-STRPPD00062936. [27]

Other than her unsupported blanket challenge to the deposition exhibits. deposition testimony and what is more than 61,000 documents, Plaintiff made no effort to identify any single document or group of documents or testimony that Plaintiff believed had been improperly designated by Defendants as Confidential

---

[25] *See* Freehand Dep. at 396:25-397:8  (Ex. C).
[26] *See* Email correspondence dated April 24 - May 1, 2017, between J. Hallmark and J. Coleman (Ex. D).
[27] Ex. D, Email from J. Hallmark to J. Coleman, April 24, 2017 at 5:18 p.m.

Information.  Thus, because of Plaintiff's lack of any explanation or specificity, Plaintiff's conduct is designed to harass Defendants, harm Defendants in the marketplace, cause needless expense, cause a needless waste of time  and/or continue a pattern of scorched-earth tactics.

Counsel for Defendants, Jesse Coleman, responded on April 27, 2017.  Mr. Coleman's email states,

> I am writing in response to your email below.  We would like to engage in a good faith effort to resolve any dispute you may have regarding whether these designated materials properly constitute confidential materials before it becomes necessary to seek any relief from the Court.
>
> You have asked us to remove our designations to nearly 60,000 pages of materials.  We believe a more reasonable approach would be for  you to identify specific documents (or even groups of related documents) that you intend to use and do not believe are properly designated, and we would then be happy to discuss whether a change needs to be made to their designation.[28]

Despite Defendants' reasonable and required attempt to resolve this dispute in good faith, Ms. Hallmark outright refused.  In an email dated April 27, 2017, Ms. Hallmark again responded with another blanket assertion that "I do not believe that any of the documents that have been marked confidential and have been redacted rise to the level of needing to be sealed."[29]

---

[28] Ex. D, Email from J. Coleman to J. Hallmark, April 27, 2017 at 2:29 p.m.
[29] Ex. D, Email from J. Hallmark to J. Coleman, April 27, 2017 at 4:51 p.m.

38943149v.2

Several additional emails were exchanged April 27, including an email from Defendants' counsel imploring her to engage in a good faith effort to identify and discuss specific documents to which she may or may not have a challenge.  In doing so, Defendants' counsel emphasized that, ***"A blanket request to de-designate the confidentiality of tens of thousands of documents without any attempt to specify why these documents are not properly designated does not constitute a good faith effort…"***[30]

Ms. Hallmark responded later that evening, stating, "If there are specific documents for which you have a valid basis for your claims- then I will be happy to reconsider but at this time - based on my review- I believe that they have been improperly designated."[31]  Clearly, Ms. Hallmark's refusal to engage in a good faith discussion and blanket assertion is designed to burden Defendants, attempt to improperly shift her burden to identify specific designations and continue her scorched earth tactics.

Mr. Coleman responded on Friday, April 28, 2017.  Mr. Coleman's email states:

> As to the burdens regarding confidentiality and the remainder of Defendants' production, a good-faith effort to resolve any disputes regarding whether any designated materials constitute Confidential Information or AEO information necessarily entails identifying those materials with some reasonable particularity.  You have not, at this time, done so. [32]

---

[30] *See* Ex. D, Email from J. Coleman to J. Hallmark, April 27, 2017 at 6:33 p.m.
[31] Ex. D, Email from J. Hallmark to J. Coleman, April 27, 2017 at 7:54 p.m.
[32] Ex. D, Email from J. Coleman to J. Hallmark, April 28, 2017 at 2:04 p.m.

38943149v.2

Ms. Hallmark responded later that day: "I consider the discussion that took place over the prior two days to satisfy the good faith discussion, thereby invoking the 14 day deadline as to all of the documents at issue as of yesterday."[33]  Ms. Hallmark discussed nothing, and made only her unsupported blanket assertion.

Mr. Coleman responded the following Monday, "While I do not believe you have engaged in a good faith effort to resolve our discovery disputes, I will consider us at an impasse on discussing this matter as of Friday, April 28, 2017, and will file our motion for protection with that in mind."[34]

## III.    STANDARDS FOR GRANTING THIS MOTION FOR PROTECTIVE ORDER.

The Federal Rules of Civil Procedure empower a district court to limit the use of discovered documents or information. Fed. R. Civ. P. 26(c); *Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985).  Rule 26(c) (1)(G) of the Federal Rules of Civil Procedure provides as follows:

> In General.  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (G)    requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

---

[33] Ex. D, Email from J. Hallmark to J. Coleman, April 28, 2017 at 6:52 p.m.
[34] Ex. D, Email from J. Coleman to J. Hallmark, May 1, 2017 at 2:35 p.m.

38943149v.2

Fed. R. Civ. P. 26(c)(1)(G).[35]

If the party from whom discovery is sought shows "good cause," the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) (*citing General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974));

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (*quoting United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)).   A party resisting discovery under Federal Rule of Civil Procedure 26(c)(1)(G) "must first establish that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm." *Sanchez v. Prop. & Cas.,* CIV.A.H-09-1736, 2010 WL 107606, at *1 (S.D. Tex. Jan. 7, 2010) (*citing Stone Connection, Inc. v. Simpson,* 2008 WL 1927033, at *1 (E.D.Tex. Apr.28, 2008); *Occidental Chemical Corp. v. Louisiana Public Service Commission,*

---

[35] Paragraph 17 of the September 2016 Agreed Protective Order specifies that the party that designated documents as confidential "shall have the burden to establish that party's right to protection as if this Order did not exist." Under Fed. R. Civ. P. 26(c)(1)(G), the information at issue is without question Confidential Information, the public disclosure of which would cause Defendants significant harm.

2008 WL 566833, at *2 (M.D.La. Feb.29, 2008)); see also 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043 (1970) ("Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its disclosure.").

For good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).  The district court has broad discretion in determining whether to grant a motion for a protective order. *Harris,* 768 at 684 (holding "[a]n employer's interest in preserving the confidentiality of its records for some purposes is sufficient "good cause" and issuing protective order limiting EEOC's use of employer's age and sex data to the present litigation.)

## IV.    ARGUMENT

**A.    At all relevant times, the documents and information challenged by Plaintiff has been kept confidential, private and protected from public disclosure.**

> **1.    The information contained within the Freedhand Deposition Exhibits marked CONFIDENTIAL or ATTORNEYS' EYES ONLY is Confidential Information.**

Plaintiff has wrongfully challenged the Confidential Information designation for the Freedhand Deposition Exhibit Nos. 3-27, 29-32, 34, 36, 38, 39 and 43-45.  As shown in the **Verified Exhibit A-1**, these documents contain highly competitive information regarding Defendants' financial information, business operations, product information, proprietary research and development processes, and business, sales and marketing strategies.  *See Duoline Techs., L.L.C. v. Polymer Instrumentation & Consulting Services, Ltd.*, 557 Fed. Appx. 379 (5th Cir. 2014) ("The Court has little difficulty concluding that the pricing quotations, purchase orders, invoices, cancelled checks for purchases, bills of lading, custom papers, commercial invoices, samples of molded products, and "[d]ocuments that reflect product specifications" related to any of CLS' business dealings with Defendants and other third parties contain confidential commercial information.").  Accordingly, these documents were designated CONFIDENTIAL or ATTORNEY'S EYES ONLY pursuant to the terms of the Agreed Protective Order.

Notwithstanding the protections afforded Defendants under the Agreed Protective Order, Defendants have at all relevant times nevertheless protected the

21

information detailed in **Verified Exhibit A-1** from public disclosure by requiring employees, consultants and sales representatives, including PPD, to execute confidentiality agreements and adhere to Stryker's confidentiality policies.[36] Consistent with Stryker's internal company policy and consistent with Stryker's confidentiality agreements with PPD, consultants, vendors, and even suppliers, Stryker has only distributed this information to individuals who are specifically authorized to receive and/or view it.[37]

Pursuant to Stryker's Code of Conduct and the numerous confidentiality agreements between Stryker and its employees, consultants and sales representatives, there is no question that this testimony is regarding information that has always been treated by Defendants (and by Plaintiffs) as confidential and proprietary.[38] This information at issue has never been publically disclosed and there is no legitimate reason why it should be subject to public disclosure now.

### 2. *Dr. Freedhand's deposition testimony regarding documents marked CONFIDENTIAL/ATTORNEYS' EYES ONLY is also Confidential Information.*

To the extent Dr. Freedhand was asked questions about Defendants confidential information, such testimony should also remain confidential and protected from public disclosure. During Dr. Freedhand's deposition, and pursuant to the terms of the Agreed Protective Order, counsel for Defendants advised opposing counsel and the Court Reporter that Dr. Freedhand's testimony regarding

---

[36] Ex. A at 3-7; Ex. B at 1-2.
[37] Ex. A at 10, 13.
[38] Ex. A at 9; *see also* Stryker Code of Conduct and Corporate Policy 7 (Ex. E).

38943149v.2

documents marked CONFIDENTIAL or ATTORNEY'S EYES ONLY is Confidential Information.

**Verified Exhibit A-2** specifically identifies the deposition testimony for which Defendants seek protection.   As illustrated in **Verified Exhibit A-2**, this testimony concerns highly competitive information regarding Defendants' financial information, business operations, product information, proprietary research and development processes, and business, sales and marketing strategies.   It also falls squarely within the scope of Stryker's Code of Conduct and the confidentiality provisions set forth within the various consulting and development agreements between Stryker and Dr. Freedhand.[39]   Dr. Freedhand's testimony regarding Stryker's highly competitive commercial information also meets the definition of Confidential Information set forth within the Agreed Protective Order.

Again, at all relevant times, Defendants protected the information detailed in **Verified Exhibit A-2** by requiring employees, consultants and sales representatives, including PPD, to execute confidentiality agreements and adhere to Stryker's confidentiality policies.[40]   Consistent with Stryker's internal company policy and consistent with Stryker's confidentiality agreements with PPD, consultants, vendors, and even suppliers, Stryker has only distributed this information to individuals who are specifically authorized to receive and/or view it.[41]

---

[39] *See, e.g.*, Ex. E, F, G, H.
[40] Ex. A at 3-7; Ex. B at 1-2;
[41] Ex. A at 10, 13.

Pursuant to Stryker's Code of Conduct and the numerous confidentiality agreements between Stryker and its employees, consultants and sales representatives, there is no question that this testimony is regarding information that has always been treated by Defendants (and by Plaintiff) as confidential and proprietary.  The information at issue has never been publicly disclosed and there is no legitimate reason why it should be subject to public disclosure now.

   3.    *The documents at Bates Nos. STRPPD00000982-00062936 and designated CONFIDENTIAL/ATTORENY'S EYES ONLY also contain Confidential Information.*

Finally, Plaintiff has asserted a non-specific blanket challenge to documents produced by Defendants at bates nos. STRPPD00000982-00062936.  Despite Plaintiff's refusal to specifically identify or discuss any of the Confidential Information designations contained within what is roughly 61,000 documents challenged by Plaintiff, Defendants undertook a detailed review of the documents at issue and made a good faith effort determination that the information within the documents designated CONFIDENTIAL and/or ATTORNEY'S EYES ONLY is highly sensitive commercial information regarding the business conducted by Defendants. [42]

The documents produced within this bates range include highly sensitive consultant and/or development agreements (and payments related to same) (marked ATTORNEYS ONLY), communications with consultants, communications

---

[42] *See* Ex B, App.'x.

with customers, marketing strategies, business plans, pricing information, information regarding customer relationships, customer lists, training materials, growth analysis, developer performance tracking documents, project development documents, case lists, surgical observations, proprietary clinical research, instrumentation plans, product comparisons, and personnel information related to employees.[43]   This bates range contains information regarding Defendants' relationships with customers, surgeon consultants, hospitals and other healthcare providers, defendant's revenues, sales and distribution of MAKO and Stryker Orthopaedics products, as well as documents relating to agreements for research and development of new products and services with customers, physicians, hospital systems, and other healthcare providers.[44]

These documents also contain information regarding Stryker's marketing and development strategies, including surgeon developed curriculum, training and continuing education materials and materials related to Stryker's proprietary customer events hosted by Stryker's surgeon consultants.  These documents further contain highly specific information regarding sales, and highly specific information on Stryker's customers, including their background, their interests, their needs and Stryker's efforts in targeting them; business plans by branch containing customer relationship information and sales strategies; product price lists and product and

---

[43] Ex. B, App.'x; Ex. A at 11-12.
[44] Ex. A at 11-12.

38943149v.2

sales information.[45] *See also Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 946 (7th Cir. 1999). ("We do not suggest that all determinations of good cause must be made on a document-by-document basis. In a case with thousands of documents, such a requirement might impose an excessive burden on the district judge or magistrate judge.").

Again, Defendants have at all relevant times protected this information from public disclosure by requiring employees, consultants and sales representatives, including PPD, to execute confidentiality agreements and adhere to Stryker's confidentiality policies.[46] Consistent with Stryker's internal company policy and consistent with Stryker's confidentiality agreements with PPD, consultants, vendors, and even suppliers, Stryker has only distributed this information to individuals who are specifically authorized to receive and/or view it. [47]

Pursuant to Stryker's Code of Conduct and the numerous confidentiality agreements between Stryker and its employees, consultants and sales representatives, there is no question that this testimony is regarding information that has always been treated by Defendants (and by Plaintiffs) as confidential and proprietary. Ex. A, p. 9. Like the exhibits and testimony above, this information at issue has never been publically disclosed and there is no legitimate reason why it should be subject to public disclosure now.

---

[45] *Id.*
[46] Ex. A at 3-7; Ex. B at 1-2.
[47] Ex. A at 10, 13.

**B.    Defendants would suffer significant harm if its confidential information was publically disclosed.**

Disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor. *Duoline Techs., L.L.C. v. Polymer Instrumentation & Consulting Services, Ltd.,* 557 Fed. Appx. 379 (5th Cir. 2014) (*citing Echostar Commc'ns Corp. v. The News Corp. Ltd.,* 180 F.R.D. 391, 395 (D. Col. 1998)). There is no dispute in this case that Plaintiff and Defendants are competitors.  The practical effect of denying Defendants protection in this case would allow Plaintiff's to use Defendants information outside the context of this lawsuit for the purpose of gaining a competitive advantage over Defendants.  Absent protection, there is no question that Defendants will suffer competitive harm.

Defendants' confidential and proprietary information challenged by Plaintiff is collected and maintained by Defendants in an effort to "improve its sales as a manufacturer and seller of reconstructive orthopaedic and trauma products and maintain its competitive edge in the market place."[48]  Consequently, Stryker's confidential and proprietary information is of significant economic value to Defendants.  *Id.* Public disclosure of Defendants confidential information would cause extreme competitive harm to defendants and put Defendants at an extreme competitive disadvantage.[49]  Indeed, Plaintiff's own representatives have explicitly

---

[48] Ex. A at 10, 13.
[49] Id. 10-11, 13-14

38943149v.2

recognized and agreed that "great and irreparable harm to Stryker" will result public disclosure of its confidential information.[50]

The Declaration of Lauren Venekas establishes the highly competitive nature of Defendants' business, the significant measures taken by Defendants to protect its information from public disclosure, and the extreme competitive commercial harm and competitive disadvantage that Defendants would suffer from public disclosure of its confidential and proprietary information.   A protective order is therefore necessary in this case to protect Defendants from being put in a competitive disadvantage. Defendants have shown good cause for entering a protective order, protecting Defendants confidential information from public disclosure.

## C.      The balancing of interests weighs in favor of protection.

In determining whether "good cause" exists, courts also balance the competing interests of allowing discovery and protecting parties from commercial harm. *See Bucher v. Richardson Hosp. Auth,* 160 F.R.D. 88, 92 (N.D. Tex. 1994); *Duoline Techs., LLC v. Polymer Instrumentation,* MO-12-MC-061, 2012 WL 12871906, at *6 (W.D. Tex. Nov. 26, 2012), *order modified and remanded sub nom. Duoline Techs., L.L.C. v. Polymer Instrumentation & Consulting Services, Ltd.,* 557 Fed. App'x 379 (5th Cir. 2014).

Critical to this motion is the fact that, for purposes of this lawsuit, Plaintiff has complete and unlimited access to the information that Defendants have designated

---

[50] Ex. A at 6.

as CONFIDENTIAL and ATTORNEY'S EYES ONLY, subject only to certain procedural requirements set forth in the Agreed Protective Order governing the use and filing of same. Defendants are not withholding discovery or information from Plaintiff. These records have already been produced to Plaintiff in both redacted and non-redacted form. And, it is the Defendants, not Plaintiff which bears the burden of obtaining an order to seal confidential information in the event that filing information designated as confidential becomes necessary.

Defendants are merely trying to prevent public disclosure of information that is and has always been treated as confidential. Under these circumstances, Plaintiff cannot overcome the good cause that Defendants established for the confidentiality of its proprietary and commercial information. Plaintiff's apparent made-up justification for needlessly and broadly objecting to the confidential designations is that Plaintiff does not want to be inconvenienced during a deposition (to the extent Plaintiff relies upon confidential information that a witness must agree to keep confidential)[51] or upon filing a motion that requires submission of documents to the Court *in camera*. Neither of these purported circumstances outweighs Defendants' interest in protecting the confidential nature of Defendants' commercial information that has been produced in this case.

Therefore, the Court should grant protection to these confidential files and documents as a matter of law.

---

[51]Indeed, the Agreed Protective Order allows Plaintiff to use Confidential Information during depositions as long as the witness agrees to keep the information confidential under the terms of the Agreed Protective Order. Dkt. 34-1¶ 13.

**D.**   **Plaintiff's blanket challenge and refusal to meet and confer ignores the court ordered procedures set forth in the Agreed Protective Order.**

The Agreed Protective Order requires Plaintiff to *specifically* challenge the information Defendants designated as Confidential Information and to meet and confer in good faith regarding same.  The Agreed Protective Order provides:

> 15.   Any party may request that a designating party rescind ***a Confidential Information designation***, and such requests shall not be rejected absent a good faith determination by the designating party that the Confidential Information is entitled to protection.
>
> 16.   ***After making a good faith effort to resolve any disputes regarding whether any designated materials constitute Confidential Information or AEO information, counsel of the party or parties receiving the Confidential Information or AEO may challenge such designation*** of all or any portion thereof by providing written notice of the challenge to the designating party's counsel.  The designating party shall have fourteen (14) days from the date of receipt of a written challenge to file a motion for specific protection with regard to any Confidential Information or AEO in dispute…." Dkt. 34-1¶16.

Plaintiff's blanket challenge to over 60,000 documents produced in this case and refusal to identify specific designations or meet and confer ignores the court ordered procedures set forth in the Agreed Protective Order.  Plaintiff asserted a non-specific blanket challenge to over 61,000 documents produced by Defendants in this case, some of which are marked CONFIDENTIAL and some of which are marked ATTORNEY'S EYES ONLY.  Out of these 61,000 documents, Plaintiff refused to identify any specific document or even groups or categories of documents that

Plaintiff believes have been improperly designated by Defendants as CONFIDENTIAL. Likewise, Plaintiff has refused to specifically identify the documents that Plaintiff believes are improperly designated as ATTORNEY'S EYES ONLY.

Plaintiff also asserted a blanket challenge to the Freedhand deposition exhibits, refusing to identify any specific document or even categories of documents that Plaintiff believes has been improperly designated.

In similar fashion, Plaintiff has in no uncertain terms refused to engage in any discussion whatsoever regarding the reasons that Plaintiff believes Defendants' designation of Confidential Information should be removed.

The Agreed Protective Order speaks to specific challenges of a Confidential Information designation and, following a good faith effort to resolve a dispute, a specific motion for protection. In a case with thousands of documents, such as this, these procedures are designed to protect a producing parties' legitimate interest in preserving the confidentiality of its proprietary and trade secret information and prevent the inevitable commercial harm that would result from the public disclosure from same and avoid an excessive, if not impossible burden upon the producing party and upon the district judge or magistrate judge. Absent specific challenges and a good faith effort to confer with Defendant regarding defendants confidential designations, Defendant's information should remain protected from public under the terms of the Agreed Protective Order.

E.      **Defendants request an *in camera* inspection to the extent necessary**

Alternatively and to the extent necessary, Defendant requests permission to submit the documents being challenged by PPD to the Court for a review *in camera*, and that the Court maintain Defendant's Confidential Information designations pending the Court's review of same.

## V.      MOTION FOR SANCTIONS

### PPD should be sanctioned for this discovery abuse

PPD's blanket and wrongful challenge to the confidentiality designation of more than 61,000 pages of documents, its blanket and wrongful challenge to every exhibit marked Confidential in the Dr. Freedhand deposition, its blanket and wrongful challenge to the confidentiality of any of Dr. Freedhand's testimony, its abject and blatant refusal to identify with any specificity the nature of its challenge or the specific documents at issue, and its outright refusal to engage in a good-faith effort to resolve this discovery dispute and provide any detail regarding the nature of its challenge, is an abuse of discovery.  It has manipulated this Court's Agreed Protective Order and abused the authority the Court has provided the parties under the Order to address discovery disputes.   Accordingly, Defendants respectfully request that this Court award Defendants sanctions for the cost of preparing and arguing this Motion for Protection.  *See* Fed. R. Civ. P. 37 (expenses may be awarded for failure to follow court order); *Frame v. S-H, Inc.*, 967 F.2d 194, 202 (5th Cir.

1992) (imposition of discovery sanctions was a matter of discretion for the district court).

## VI. CONCLUSION

Absent an order ruling that these documents will continue to be treated as confidential pursuant to the Agreed Protective Order, Defendants' overriding interest in the protection of its confidential information would certainly be destroyed due to its public disclosure.  Accordingly, Defendants respectfully request that the Court issue an Order maintaining the confidentiality designations for the documents produced by Defendants at STRPPD00000982-00062936 and the Freedhand deposition exhibit nos. 3-27, 29-32, 34, 36, 38, 39 and 43-45.  Defendants also seek an order designating as CONFIDENTIAL and/or ATTORNEY'S EYES ONLY the deposition testimony identified in **Verified Exhibit A-2**, attached to the supporting Declaration of Lauren Venekas.  Finally, Defendants request that the Court sanction PPD for their deliberate failure to follow this Court's Stipulated Protective Order and refusal to identify specific designations nor meet and confer in good faith.


DATED:  May 11, 2017

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:    */s/ Jesse M. Coleman*
      Suzanna Bonham
      Texas Bar No. 24012307
      Jesse M. Coleman
      Texas Bar No. 240702044
      700 Milam Street, Suite 1400
      Houston, Texas  77002-2812
      Telephone:  (713) 225-2300
      Telecopier:  (713) 225-2340

      Michael D. Wexler
      Illinois State Bar No. 6207847
      131 Dearborn Street, Suite 2400
      Chicago, Illinois  60603

      *Attorneys for Defendants*
      *Stryker Corporation, MAKO Surgical Corp.,*
      *Howmedica Osteonics Corp. and*
      *Stryker Sales Corp.*

38943149v.2

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon the counsel of record listed below by the Southern District of Texas ECF method on the 11th day of May, 2017.

> Jessica L. Hallmark
> Dunham Hallmark, PLLC
> 4180 Delaware, Suite 301
> Beaumont, Texas 77706
>
> Joe Ahmad
> Ahmad, Zavisanos, Anaipakos
>     Alvai & Mensing, PC
> 1221 McKinney, Suite 2500
> Houston, Texas 77010

*/s/ Jesse M. Coleman*
Jesse M. Coleman

38943149v.2