IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PPD ENTERPRISES, LLC<br>   *Plaintiff* | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:16-CV-00507 |
| STRYKER CORPORATION, AND<br>MAKO SURGICAL CORP. | § § § | Jury Trial Demanded |

**PLAINTIFF, PPD ENTERPRISES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR PROTECTION AND
MOTION FOR SANCTIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, PPD ENTERPRISES, LLC, through its counsel, and files the following Response to Defendants' Motion for Protection and Motion for Sanctions. In support thereof, Plaintiff would show as follows:

**I.
SUMMARY OF RESPONSE**

1. To date, Defendants, MAKO SURGICAL CORPORATION (hereinafter referred to as "MAKO"), STRYKER CORPORATION, STRYKER SALES CORPORATION, and HOWMEDICA OSTEONICS CORP. (collectively referred to as "Stryker") have produced 64,106 documents. Defendants have designated every single document produced by them, which to date is 64,106 documents, Confidential or Attorneys Eyes Only[1]. After review of the documents, and

---

[1] Exhibit "A," is a flash drive, provided *in camera*, containing all documents produced by Defendants up to bates 62,936, including the non-redacted and redacted versions. Also included on the flash drive is Dr. Adam Freedhand's deposition, along with the exhibits to the same. These items are "attached hereto" and incorporated by reference. Plaintiff is providing this so that the Court can readily access any of the documents the Court wishes to review in consideration of the issues at hand.

pursuant to the Agreed Protective Order, Plaintiff challenged Defendants' designation as to the documents which had been reviewed thus far. Defendants now complain that Plaintiff's challenge is an "attempt to improperly shift her burden to identify specific designations." Defendants are the only party attempting to shift a burden which belongs with them, a burden which Defendants have failed to meet as exhibited by their blanket designation of 64,106 documents as Confidential or Attorneys Eyes Only.

2.    The parties worked for months in an attempt to agree upon the Agreed Protective Order as is evidenced by the specific provisions regarding the provision of redacted and non-redacted documents, as well as the filing of the redacted versions of the documents, etc. These agreements were made based on the representations that Defendants would make a good faith effort to only designate truly confidential information and that Defendants **would only redact information which Defendants believed would need to be sealed.**[2] Defendants have not done so, however. Defendants redactions, consist of thousands upon thousands of pages of emails wherein Defendants have simply blanked out the entire documents, abusing the intent behind the Agreed Protective Order. Names of persons to emails, the dates, the subject matters, etc. have all been redacted.[3]

3.    Defendants' actions have created unnecessary burdens which should not exist as was

---

[2]   See Exhibit "B," Agreed Protective Order, attached hereto and incorporated by reference. See Paragraph 4.

[3]   The Fifth Circuit recognizes a presumption of public access to judicial records. *S.E.C. v. Van Wasyenberghe*, 990 F2d 845, 848 (5th cir 1993). In exercising discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure. *Id.* The court's discretion to seal the record of judicial proceedings is to be exercised charily. *Federal Savings and Loan Ins. Corp. V. Blain*, 808 F.2d 395, 399 (5th Cir. 1987). The party seeking to overcome the presumption of access bears the burden of showing the interest in secrecy outweighs the presumption. *N. Cypress Med Ctr. Operating Co. Ltd. V. Cigna Healthcare No. 4:09 cv 2556, 2012 WL 1293404 at 34 i(S.D. Tex Sept 27, 2012.*

evidenced in Plaintiff's recent filing. The *in camera* documents would not require sealing, yet Defendants redacted information. Furthermore, at the recent deposition of Dr. Freedhand, Defendants objected to the use of emails (related to Dr. Freedhand but which he was not a party)[4] until Dr. Freedhand executed an Agreement to be bound by the Agreed Protective Order. Plaintiff did not have a copy and requested a copy from Defendants who informed Plaintiff's counsel ***"I am not going to pull up or access or find documents for you. If you want to pull up the protective order, that's your business. That's your problem. I am not your paralegal. So if you want to work that out, that's your burden, not mine. I'm not going to sit here and go searching for documents for you."*** (See Exhibit "C," Dr. Adam Freedhand's Deposition, pp. 337-345, 340, attached hereto and incorporated by reference). Dr. Freedhand's attorney refused to allow Plaintiff's counsel to utilize a computer to access the Agreed Protective Order. *Id.* Therefore, after taking an hour recess, Defendants' counsel finally obtained a copy of the form which he demanded be signed and the deposition proceeded.

4. The Agreed Protective Order was to promote the efficiency of the discovery process and the case while protecting truly confidential information. Unfortunately, the Agreed Protective Order has done the opposite and has been utilized as a weapon by Defendants.[5] Plaintiff requests this Court lift the confidentiality designations, especially in light of Defendants' blanket confidentiality

---

[4] See Exhibit "D," STRPPD00014719-14720, attached hereto and incorporated by reference. This email is a prime example of information improperly designated confidential. Furthermore, the attached redacted version demonstrates Defendants abuse of the process set forth in the Agreed Protective Order.

[5] See Plaintiff's Motion For Relief From Protective Order (Dkt. 115). Defendants refuse to modify provisions of Protective Order to allow questioning of out of town witness despite the fact that the witnesses attorney will not allow the witness to sign the Acknowledgment as written.

designation as to every single document produced. In the alternative, Plaintiff requests the Court order Defendants to make a good faith effort to identify the documents which they believe are truly confidential and modify the Agreed Protective Order in either of the following ways: (1) to simply reflect that any Confidential Information or Attorneys Eyes Only information can be utilized in connection to this litigation but is to otherwise remain confidential and remove all other requirements, except for the continued ability to challenge the designation, or (2) remove the requirements set forth in Paragraphs 3, 4, and 13. Plaintiff further requests that this Court strike Defendants' confidentiality designation as to Dr. Adam Freedhand's deposition, as well as the exhibits attached thereto.

## II.
## ARGUMENT & AUTHORITY

**The Burden Lies With Defendant — Pursuant To the Agreed Protective Order & The Law**

5.     The Agreed Protective Order specifically states that "any party may request that a *designating party* rescind a Confidential Information designation, and such requests shall not be rejected *absent a good-faith determination by the designating party* that the Confidential Information is entitled to protection." Plaintiff challenged Defendants' — the designating party's — designation. Defendants' response was to request Plaintiff "to identify specific documents (or even groups of related documents) that you intend to use and do not believe are properly designated." (See Exhibit "E," Email Chain Between Counsel for Defendants and Plaintiffs, attached hereto and incorporated by reference). Plaintiff did specify the documents which were challenged following review of the same. Plaintiff furthermore pointed out to Defendants that short of social security numbers, EIN numbers, and patient information, there was no other information which appeared

confidential; however, if there were certain items which Defendants wanted Plaintiff to reconsider, Plaintiff was happy to do so. *Id.* Other than that, Plaintiff is not required to do anything further. Defendants are to make a good faith determination that the information is entitled to protection — not Plaintiff. Furthermore, the burden which Defendants complain of was created by Defendant blanket confidentiality designation of every document produced, as well as the manner in which the production was made (i.e., the production of over 60,000 documents at once).

6. The designating party shall have the burden to establish that party's right to protection as if the Agreed Protective Order does not exist. The burden is upon the party seeking the protective order to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact ***as distinguished from stereotyped and conclusory statements***." *Sanchez v. Property Cas.*, No. H-09-1736, 2010 WL 107606 *1 (S.D.Tex.Jan.7,2010) (citing *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998)). The party resisting discovery under Federal Rule 26(c)(1)(G) "'must first establish that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm.'" *Id.* (quoting *Stone Connection, Inc. v. Simpson*, 2008 WL 1927033, at *1 (E.D.Tex.Apr.28,2008). The district court has broad discretion in determining whether to grant a motion for protective order. *Id.*; (citing *Harris*, 768 F.2d at 684).

7. Defendants have not met their burden, rather Defendants and their representatives have made conclusory statements. Defendants have not established that the documents are a trade secret or confidential and they have not identified a significant harm should the documents be disclosed.

**Objections & Response To Affidavits of Karen Hassevoort and Lauren Venekas**

8. Plaintiff objects to the affidavits of Karen Hassevoort and Lauren Venekas to the extent they

-5-

contain statements for which neither have personal knowledge. Plaintiff also objects to the affidavits to the extent they contain hearsay, as well as the fact that they contain improper legal conclusions.

9.    Karen Hassevoort's affidavit states that the confidentiality designations placed on the documents (STRPPD982-62936) "were made by Stryker in good faith;" however, Ms. Hassevoort does not state if she was one of the persons who made those designations or even how the designations were made. Although her affidavit states that she is "personally familiar" with Stryker's collection, review and production, she does not state how or to what extent she was involved in the same. Nothing in the affidavit states that Ms. Hassevoort has actually reviewed the documents or how the Appendix attached to her affidavit was derived. She goes on to state that Stryker has at all relevant times treated the information sought by PPD as proprietary and confidential, only distributing to those individuals who are specifically authorized to receive and review such documents. This very general statement is false in more than one way. First of all, there are hundreds, if not a thousand blank pages, which clearly are not confidential - but were produced and marked the same. Second of all, there are numerous emails with third party individuals, including UT employees, for which no confidentiality agreements have been placed. There was nothing in the emails with outside third parties which even requested the information be kept confidential. A prime example is STRPPD00014719-14720.

10.   Lauren Venekas claims that she is familiar with many of the exhibits attached to Dr. Freedhand's deposition and claims that "none of those documents have been distributed, shown to, or made available to anyone other than those personnel who have a specific reason to utilize these materials;" however, some of these documents include third persons to whom no confidentiality agreements exist. Furthermore, Ms. Venekas cannot testify and has not asserted that neither Dr.

Freedhand nor the other individuals on the emails have shared those documents with others. For example, Dr. Freedhand's CV is Exhibit 9 to his deposition. There is no evidence that Dr. Freedhand has agreed to keep his CV confidential and not share it with others, much less any evidence that he has not already shared it with others. Furthermore, Dr. Freedhand's Consulting Agreements do not preclude him from sharing his own CV.

11.   Ms. Venekas further claims that "if a competitor were to gain access to this type of information[6], disclose it, or use it, it would give that competitor an unfair advantage;" however, she fails to explain how or why, which is likely because nothing contained therein would give any competitor an unfair advantage. By way of example, Exhibits 3 & 4 are related to PST instrumentation and implants and a doctor switching to utilize the same (i.e., Dr. Freedhand). The fact that MAKO had PST instrumentation and implants was not a secret by any means. They sold those products to doctors and hospitals across the country. Additionally, the facts contained in those emails (i.e., Dr. Freedhand was "switching from Corin to PST as soon as he get implants and instruments") have already taken place. In what way would this information be utilized by a competitor for an unfair advantage? There is none. Exhibit 5 is the same — "Dr. Freedhand first PST Cup with Mako." Nothing prevents Dr. Freedhand from telling others about the products he utilizes. Exhibit 6 is an email wherein an employee of MAKOs sent a Return On Investment to Dr. Freedhand for a meeting to sale a MAKO robot. There is nothing directing Dr. Freedhand to keep that information confidential, much less anything stating whether or not the hospital to whom the sale was to be made had to maintain confidentiality.

---

[6]   Ms. Venekas is referring to Exhibits 3-32, 34, 36, 38-39, and 43-45 attached to Dr. Freedhand's deposition.

12. Dr. Freedhand's various Consulting Agreements, while arguably confidential, do not rise to the level of requiring a Motion To Seal. Furthermore, some are marked Attorneys Eyes Only and some are marked Confidential. While there are several consulting agreements which have not been redacted, the ones that have include the redaction of Dr. Freedhand's name — which is not information that requires protection or non-disclosure. Review of openpaymentsdata.gov or dollars for docs - propublica demonstrates Dr. Freedhand is a consultant with Stryker. Moreover, the amounts of money that Dr. Freedhand receives in connection to his consulting is to be disclosed to the public given he is a State of Texas employee, as well as the Physicians Payments Sunshine Act, also known as section 6002 of the Affordable Care Act of 2010. The Physicians Payments Sunshine Act requires device manufacturers to report to Centers for Medicare and Medicaid Services ("CMS") any payments or other transfers of value made to physicians. That information is then placed on openpaymentsdata.gov. Exhibit 43 is a receipt from a dinner paid for by Stryker which Dr. Freedhand attended — payment of this dinner is required to be disclosed.

13. Ms. Venekas' affidavit does not state that she has reviewed or read the documents at issue (i.e., STRPPD982-62936). Furthermore, the affidavit does not demonstrate that she has any knowledge of the documents or what's contained therein, other than her statement that she has "read" Ms. Hassevoort's affidavit wherein Ms. Hassevoort "describes in detail the documents produced by Stryker." Ms. Hassevoort does not describe in detail the documents produced by Stryker. Ms. Hassevoort simply did a one page chart for thousands upon thousands of documents, which is partially inaccurate. Therefore, Ms. Venekas' testimony via affidavit about what the information contained in those documents, as well as the highly confidential nature of the same and the steps taken to protect the same should be stricken given she has not established that she has any personal knowledge about the actual information contained therein.

14. Ms. Venekas claims that the documents produced contain surgeon developed curriculum, training and continuing education materials and materials related to Strykers proprietary customer events hosted by Stryker's surgeon consultants; however, neither Ms. Venekas nor anyone else has demonstrated that these materials are to remain confidential after they are then shared with other physicians. Stryker's surgical techniques drafted by consultants are available online. Stryker's product price lists are available online. Ms. Venekas states that Stryker "collects this information" in an effort to drive and improve its sales; however, she does not point to the specific documents which contain this "information." Moreover, she fails to explain how Stryker would be harmed in any way should this information not maintain its confidentiality.

**Dr. Freedhand's Deposition Testimony & Exhibits**

15. Dr. Freedhand is a government employee — an employee of the State of Texas making $850,000.00 per year. As such, a great majority of Dr. Freedhand's records are accessible via a Public Information Request. Furthermore, the taxpayers and public have a right to know and interest in Dr. Freedhand's work and consulting activities. Defendants claim that Dr. Freedhand's CV is confidential — a document in which they have no ownership. Moreover, they have not put forth any evidence that Dr. Freedhand has agreed to keep his CV confidential. See also paragraphs 10-12 *supra* as to the reasons why the exhibits attached to his deposition are not confidential. Dr. Freedhand's social security numbers or EIN numbers have been redacted to protect the same.

**PPD Enterprises, LLC & No Evidence of Competitive Harm**

16. While Plaintiff is a distributor for Corin USA, a competitor of Stryker's, Plaintiff is not involved in the development of new products nor is Plaintiff involved in arranging or contracting with orthopaedic surgeons for consulting and development agreements. (See Dkt. No. 24 , Exhibit

"A," Affidavit of Angie Domingues). Plaintiff has never paid consulting fees to any orthopaedic surgeon and that is not part of Plaintiff's business model. *Id.* Rather, that portion of the business, if any, is carried out by the manufacturer – not Plaintiff. *Id.* None of the information gathered in this litigation has to be shared with Corin USA, nor is it Plaintiff's intention to do the same. *Id.*

17.     Defendants' argue that the denial of their Motion For Protection would essentially give Plaintiff the ability to use the information produced by Defendants outside the context of this lawsuit for "purposes of gaining a competitive advantage;" however, Defendants fail to demonstrate, however, how any of the information produced could be utilized by a competitor to gain a competitive advantage — this is because they cannot demonstrate the same. Furthermore, Plaintiff has no desire to utilize the information outside the context of this litigation; however, Plaintiff does need to be able to utilize the information in the litigation, which Defendants have repeatedly tried to block.

**Defendants' Designations Are Nonsensical**

Defendants claim that the production contains production of "highly sensitive commercial information" including the production of surgeon developed curriculum, training and continuing education materials; however, Defendants did not redact the actual developed curriculum or surgery techniques. (See Exhibit "F," STRPPD00002583-R-00002886-R, attached hereto and incorporated by reference). Defendants did not redact STRPPD00003173-00003174, yet Defendants claim to have redacted STRPPD00003175-00003177 – but no redactions are seen. Furthermore, 3173-3174 is the same as 3175-3177. (See Exhibit "G," STRPPD00003173-00003174, 00003175-00003177, attached hereto and incorporated by reference). The emails contained therein tell the sales reps to forward the attached document to "your surgeon." The attached list contains a listing of all 2013

Surgeon Education and Training. (See Exhibit "H," STRPPD00003177-00003178, attached hereto and incorporated by reference). Nothing tells the sales reps to tell their surgeons to keep the information confidential. Nothing on the brochure indicates the confidentiality of the same, except for the designation by Defendants.

STRPPD00004134 was designated "Confidential" by Defendants; however, as is obvious from the email, there is nothing "Confidential" regarding the same. (See Exhibit "I," STRPPD00004134, attached hereto and incorporated by reference). Furthermore, Defendants redacted the entire document. Redactions are only to be made as to information which Defendants believe a Motion To Seal would be necessary; however, there is absolutely no necessity for the redaction of any of this information.

None of the information contained in these examples could possibly cause competitive harm, and the information which may arguably contain information (i.e, techniques, etc.) Defendants did not redact.

**Sanctions Should Be Denied**

Plaintiff has followed the procedures set forth in the Agreed Protective Order, and Plaintiff has obeyed the Orders of this Court in connection to abiding by the same. As such, Defendants request for sanctions should be denied.

## CONCLUSION

"'A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal.'" *Sanchez v. Property Cas.,* No. H-09-1736, 2010 WL 107606 (S.D.Tex.Jan.7,2010) (quoting *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)). Plaintiff does not want to do anything illegal with the information sought nor has Plaintiff

done such. Plaintiff simply wants to be able to utilize the information produced in prosecution of this cause, including the filing of motions, depositions and trial.

Defendants have failed to establish that the information is a trade secret or other confidential information. Defendants have also failed to demonstrate how disclosure would cause an identifiable, significant harm. Defendants have designated every single document produced by them as Confidential or AEO. Defendants have designated some versions of the same documents as AEO and others just Confidential. Defendants redactions consist of basically blanking out thousands and thousands of emails — despite the fact that those emails do not contain any confidential information.

Defendants are to make a good faith determination that the information is entitled to protection — not Plaintiff. Plaintiff reviewed the documents as produced and challenged the same, just as Plaintiff did for the first group of documents. Defendants to date have not done a Motion For Protection Order as to that challenge, which included consulting agreements with Freedhand. Plaintiff advised Defendants that Plaintiff would be happy to consider any particular documents with which Defendants were concerned — Defendants pointed to none.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court deny Defendants' Motion for Protection and Motion for Sanctions. Plaintiff requests this Court lift the confidentiality designations, especially in light of Defendants' blanket confidentiality designation as to every single document produced. In the alternative, Plaintiff requests the Court order Defendants to make a good faith effort to identify the documents which they believe are truly confidential and modify the Agreed Protective Order in either of the following ways: (1) to simply reflect that any Confidential Information or Attorneys Eyes Only information can be utilized in connection to this litigation but is to otherwise remain confidential and remove all other requirements, except for the continued

ability to challenge the designation, or (2) remove the requirements set forth in Paragraphs 3, 4, and 13. Plaintiff further requests that this Court strike Defendants' confidentiality designation as to Dr. Adam Freedhand's deposition, as well as the exhibits attached thereto. Plaintiff prays for any and all further relief to which it may be entitled.

DATED:    JUNE 1st, 2017              RESPECTFULLY SUBMITTED:

/s/ *Jessica L. Hallmark*
JESSICA L. HALLMARK    *Lead Counsel*
State Bar No. 24041045
Southern District Bar No: 1124630
DUNHAM HALLMARK, PLLC
4180 Delaware, Suite 301
Beaumont, Texas 77706
Telephone: 409-434-4185
Facsimile: 888-325-0090


/s/ *Joseph Y. Ahmad*
JOSEPH Y. AHMAD
State Bar No. 00941100
Email:joeahmad@azalaw.com
Ahmad, Zavitsanos, Anaipakos, Alvai & Mensing, PC
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June in the year of 2017, the foregoing Response To Defendants' Motion for Protection and Motion for Sanctions was served on all counsel of record via CM/ECF electronic filing pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas.

/s/ <i>Jessica L. Hallmark</i>