UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PPD ENTERPRISES, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-0507 |
| | § | |
| STRYKER CORPORATION, ET AL., | § | |
| *Defendants*. | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

This matter is before the court on plaintiff PPD Enterprises, LLC's motion for summary judgment on defendant's counterclaim (Dkt. 145).[1] Having considered the parties' submissions and the law, the motion is denied.

### Background

In June 2013, PPD and MAKO Surgical Corp. entered into a Sales Representative Agreement pursuant to which PPD would be the exclusive sales representative for MAKO Restoris partial knee and total hip replacement implant systems and related accessories. The MAKO implants are designed to be used with MAKO's RIO (Robotic Arm Interactive Orthopedic) system. PPD also distributes products manufactured by Corin, USA, a MAKO/Stryker competitor.

MAKO terminated the Sales Representative Agreement on October 13, 2014, citing violations of Section 4.1 of the Agreement regarding PPD's responsibilities. Dkt. 160-6. PPD sued defendants in February 2016 asserting claims for breach of contract and tortious interference with PPD's business relationships. In December 2016, defendants filed a breach of contract counterclaim against PPD. PPD now seeks summary judgment

---

[1] Defendants are MAKO Surgical Corp., Stryker Corporation, Stryker Sales Corporation, and Howmedica Osteonics Corp. Stryker Corporation acquired MAKO, a medical device manufacturer, in December 2013.

on the counterclaim because "PPD never sold a "Competitive Product" nor engaged in "Competitive Activities" as defined in the Agreement, and MAKO has no evidence of the same." Dkt. 145, at 1.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine disputes of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of proving that there are no genuine disputes of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the submitted evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Analysis**

Defendants' counterclaim alleges:

> PPD materially breached the Sales Representative Agreement by, among other things, selling products competitive to the MAKO RESTORSIS partial knee implant systems and related consumables and instruments and the MAKO RESTORSIS total hip arthroplasty implant systems and related consumables and instruments (including Corin products) in 2014 prior to the termination of the Agreement.

2

Dkt. 41, at 3. To succeed on this claim, defendants must prove (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages. *David v. Texas Farm Bur. Ins.*, 470 S.W.3d 97, 104 (Tex. App. — Houston [1st Dist.] 2015, no pet.).[2] There is no dispute in this case that the Sales Representative Agreement is a valid contract, and PPD does not contend that MAKO failed to perform.

PPD argues first that there is no evidence that PPD sold "Competitive Products" as defined in the Agreement. Defendants counter that even if true, PPD breached its contractual obligation "to use commercially-reasonable efforts to sell MAKO-branded products with the MAKO surgical robot." Dkt. 175 at 2. PPD contends that defendants did not plead this "commercially-reasonable efforts" claim, and that in any event there is no evidence that PPD's sale of Corin USA products violates the Agreement.

***Competitive products.*** The Agreement provides:

> Representative represents and warrants that <u>Exhibit III</u> of this Agreement contains a complete listing of all products currently sold and contemplated to be sold by Representative, Principal or any of their affiliated individuals or entities as of the Effective Date. . . . Representative agrees that commencing on the Effective Date and continuing throughout the term of this Agreement, Principal and its personnel will not engage in the sale of Competitive Products as hereinafter defined, without obtaining prior written consent from Company, which consent may be withheld in Company's sole discretion. ***"Competitive Products"*** shall mean any (a) orthopedic robotic system used in connection with the implantation of a medical device and (b) any image guided or computer assisted surgical system used in connection with the

---

[2] The Agreement provides for application of Florida law, Dkt. 145-1 at 17, but both sides cite Texas law and PPD asserts that Texas and Florida law are "essentially the same" Dkt. 145 at 4. The court will cite Texas law.

> implantation of a medical device. For purposes of this Agreement, *"Competitive Activities"* shall mean selling, offering for sale, promoting, receiving or soliciting orders for Competitive Products or accepting remuneration of any kind from any person providing such goods or services.

Dkt. 145-1 at 4 (Agreement Section 4.1(ii)) (emphasis in original). There is no dispute that PPD sold Corin products, and that MAKO knew PPD sold Corin products. Indeed, it says as much in the Agreement itself. *See* Exhibit III of the Agreement (Dkt. 145-1 at 25). PPD contends that it does not sell "Competitive Products" as defined by the Agreement because the medical devices it sells are not a "robotic system" or "image guided or computer assisted surgical system." Defendants apparently concede this point for purposes of summary judgment because the response does not address whether PPD breached the agreement by selling "Competitive Products" or engaging in "Competitive Activities" as defined in Section 4.1(ii). Instead, defendants focus on evidence of breach of different provisions of the Agreement, Sections 4.1(i) and 4.4.

*Defendants' pleading.* PPD argues that the only counterclaim that has been properly pled is that PPD violated the agreement by selling Competitive Products. Not so fast say defendants -- the counterclaim alleges PPD breached the Agreement by selling Competitive Products, "*among other things*," and there is no requirement in the Federal Rules of Civil Procedures that it must specify each and every provision of the contract PPD breached by its actions.[3]

The counterclaim does not identify any specific provisions of the Agreement that PPD breached. However, it has alleged the ***conduct*** that it contends constitutes the

---
[3] The court denied defendants' late request to file an amended counterclaim detailing the "other things." *See* Dkt. 153.

4

breach, *i.e.,* "selling products competitive to the MAKO RESTORSIS partial knee implant systems and related consumables and instruments and the MAKO RESTORSIS total hip arthroplasty implant systems and related consumables and instruments (including Corin products) in 2014 prior to the termination of the Agreement." Defendants continue to rely on this conduct in opposition to PPD's motion for summary judgment. *See* Dkt. 154 at 2; Dkt. 175 at 7. Defendants do not make any new allegations of wrongdoing by PPD in the summary judgment response. It is PPD that has interpreted the language in the counterclaim narrowly to allege *only* a violation of Section 4.1(ii) of the Agreement, but this narrow interpretation is not mandated by the operative pleading language. The court concludes that defendants have sufficiently pled a counterclaim for breach of contract based on Section 4.1(i):

> Representative agrees that commencing on the Effective Date and continuing throughout the term of this Agreement, Principal and its personnel will devote their commercially reasonable efforts and sufficient working time to selling Products,[4] providing clinical sales support to Company's customers in the Territory, and providing on-site guidance and assistance during each MAKOplasty® surgical procedure performed in the Territory.

Dkt. 145-1 at 2-3.[5] And Section 4.4:

> Principal will devote commercially reasonable selling and managerial efforts and sufficient time towards promotion and sales of Products.

Dkt. 145-1 at 5.

---

[4] "Products" are defined in Exhibit I to the Agreement as MAKO RESTORIS® partial knee implant systems and related consumables and instruments and MAKO RESTORIS® total hip arthroplasty implant systems and related consumables and instruments. Dkt. 145-1 at 23.

[5] Following this provision is a list of approximately 15 specific "primary responsibilities" PPD agrees to undertake. *Id.* at 3-4. Defendants specifically cite a violation of 4.1(i)(g). Dkt. 154 at 7.

5

***Commercially reasonable efforts.*** As evidence that PPD failed to use commercially reasonable efforts to sell MAKO products by promoting Corin products instead, defendants have presented affidavits from Adam Jacobs, Stryker General Manager in Houston, and Mark Campbell, Stryker Director of Key Accounts and former MAKO Senior Director of Sales.[6] Jacobs testifies that MAKO-branded implant systems and related consumables and instruments were manufactured by Corin; Corin also sold compatible implant systems that were not MAKO-branded and were not cleared by the FDA for use with the Rio; and PPD sold Corin-branded products even when MAKO-branded products were available, resulting in lost sales to MAKO. Dkt. 154-1. Campbell testifies that use of non-MAKO-branded products with the Rio is considered "off-label" Dkt. 154-3.

PPD denies that use of Corin products in the Rio system was "off-label," and contends that PPD sold Corin implants for use with Rio only when MAKO-branded implants were not available or when the surgeon specifically requested Corin products. *See, e.g.,* Dkt. 154-4 at 9-10; Dkt. 160-9 at 1. Dr. Kreuzer confirms that during the period PPD was MAKO's sales representative, it provided only implants he requested. Dkt 160-5. Dr. Freedhand's affidavit also indicates that he requested the implants he chose to use, but says that at no time did he request "off-label" Corin implant systems.[7] Dkt. 154-8. Also in evidence is an email from a MAKO representative to PPD inquiring about Dr.

---

[6] Neither side has argued that the Sales Agreement is ambiguous. For that reason, the court sustains PPD's objection to paragraph 12 of Jacobs' affidavit, paragraph 5 of the Campbell affidavit to the extent it purports to state MAKO's intent, and paragraph 6 of Campbell's affidavit, because they are inadmissible parol evidence. *Hubacek v. Ennis State Bank,* 317 S.W.2d 30, 32 (Tex. 1958). PPD's remaining evidentiary objections are overruled.
[7] It is unclear from his affidavit whether Dr. Freedhand considers all Corin products "off-label" for use with the Rio.

Kreuzer's continued use of "125 degree Corin stems" because MAKO was having difficulty keeping the MAKO brand stems in stock, Dkt. 145-3, as well as an email from the manager of commercial operations for Stryker that, according to PPD's interpretation, confirms that use of Corin "cup and liner" products is not "off-label." Dkt. 160-2 at 1.

What remains after consideration of this evidence is a fact question as to whether under all the circumstances PPD's sale of Corin-branded products breached its contractual obligation to use commercially reasonable efforts and sufficient working time to sell MAKO-branded products. The concept of commercial reasonableness is inherently one of fact, and "much depends upon the totality of the circumstances particular to each case" *Havins v. First Nat. Bank of Paducah*, 919 S.W.2d 177, 181 (Tex. App. — Amarillo, 1996); *See also Pizza Hut, Inc. v. Lundy Enter., LLC,* No. 3:11-cv-0011-N, 2013 WL 12123949 at *6 (N.D. Tex. June 11, 2013).

***Damages.*** Adam Jacobs says that each sale of a competing product by PPD was a lost sale that damaged MAKO. Dkt. 154-1 at 2.[8] While certainly subject to rebuttal, this testimony is some evidence of defendants' damages. The court declines to grant summary judgment on this basis.

## Conclusion

PPD's motion for summary judgment on defendants' counterclaim is denied. Trial of this matter remains set for jury trial commencing January 29, 2018.

---

[8] MAKO has also designated an expert to testify as to its damages. Due to delays caused by ongoing discovery disputes and Hurricane Harvey, expert reports were not submitted with summary judgment briefing.

Signed at Houston, Texas, on November 1, 2017.

                                                    Stephen Wm Smith
                                          United States Magistrate Judge