**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PPD ENTERPRISES, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-0507 |
| | § | |
| STRYKER CORPORATION, ET AL., | § | |
| *Defendants*. | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

This matter is before the court on defendants' motion for summary judgment (Dkt. 147).[1] Having considered the parties' submissions and the law, the motion is granted in part and denied in part.

## Background

In June 2013, PPD and MAKO Surgical Corp. entered into a Sales Representative Agreement pursuant to which PPD would be the exclusive sales representative for MAKO Restoris partial knee and total hip replacement implant systems and related accessories. The MAKO implants are designed to be used with MAKO's RIO (Robotic Arm Interactive Orthopedic) system. PPD also distributes products manufactured by Corin, USA, a MAKO/Stryker competitor.

MAKO terminated the Sales Representative Agreement on October 13, 2014, citing violations of Section 4.1 of the Agreement regarding PPD's responsibilities. Dkt. 160-6. PPD sued defendants in February 2016 asserting claims for breach of contract and tortious interference with PPD's business relationships. Defendants now seek summary judgment on PPD's claims.

---

[1] Defendants are MAKO Surgical Corp., Stryker Corporation, Stryker Sales Corporation, and Howmedica Osteonics Corp. Stryker Corporation acquired MAKO, a medical device manufacturer, in December 2013.

## Summary Judgment Standards

Summary judgment is appropriate if no genuine disputes of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of proving that there are no genuine disputes of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the submitted evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## Analysis

Defendants' move for summary judgment on the grounds that (1) PPD cannot establish damages as to either of its claims; and (2) PPD cannot rely on violations of various federal and state statutes that do not otherwise provide private causes of action to satisfy an element of its tortious interference claim.

***Contract Damages.*** Defendants move for summary judgment on PPD's breach of contract claim solely on the basis of damages. Damages are a necessary element of a breach of contract claim. *David v. Texas Farm Bur. Ins.*, 470 S.W.3d 97, 104 (Tex. App. — Houston [1st Dist.] 2015, no pet.). Under Texas law:

> Damages must be established with reasonable certainty, not mathematical precision. If the fact of damages has been established, then the inability to calculate the exact amount of damages is not fatal. If the best available evidence affords a reasonable basis for the jury to calculate damages, then recovery cannot be denied because the exact amount of damages cannot be ascertained.

*O & B Farms, Inc. v. Black*, 300 S.W.3d 418, 422 (Tex. App. — Houston [14th Dist.] 2009, pet. denied) (internal citations omitted).

Defendants contend that PPD has no evidence of damages because its principal, Angie Domingues, is not qualified as an expert.[2] PPD does not have to offer expert testimony on damages. *Merritt Hawkins & Assoc., LLC v. Gresham*, 861 F.3d 143, 153 (5th Cir. 2017); *ERI Consulting Engineers v. Swinnea*, 318 S.W.3d 867, 877 (Tex. 2010). Domingues is the sole member of PPD Enterprises, LLC. She has personal knowledge of PPD's Sales Representative Agreement, commissions, and business expenses. Domingues testified in her deposition that damages would be calculated based on the commissions PPD would have earned through the end of the contract term. Dkt. 147-1 at 3-5. At the time of her deposition Domingues had not calculated the dollar amount of the damages, but she has now done so.[3] PPD has also identified the documents Domingues used to make her calculation. *See* Dkt. 170 at 4-5. Defendants' argument that Domingues failed to take into account expenses in calculating PPD's lost profits is a point that can be made on cross-examination, but does not render her testimony entirely inadmissible. The court

---

[2] Brian Domingues testified that he might offer an opinion on damages, but PPD does not offer that testimony in opposition to summary judgment.

[3] PPD seeks $231,570.72 in breach of contract damages. Dkt. 170-3 at 12.

concludes that PPD has presented sufficient evidence of damages to survive summary judgment on its breach of contract claim.

***Tortious interference.*** The elements of a cause of action for tortious interference with prospective business relationships under Texas law are: (1) a reasonable probability that plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apart. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Defendants move for summary judgment on PPD's tortious interference claim based on elements 3 and 5. Because element 3 is dispositive, the court does not address PPD's tortious interference damages.

PPD alleges that defendants tortuously interfered with its relationships with Dr. Freedhand and Memorial Hermann hospital. PPD's primary claim is that Stryker's financial relationship with Dr. Freedhand violates the Federal Anti-Kickback Statute and, by extension, the False Claims Act, which allows for a *qui tam* action to redress Anti-Kickback Statute violations. The Anti-Kickback Statute "prohibits the knowing and willful solicitation, receipt, offer, or payment of any type of benefit to induce referrals or business covered by a federal health care program." *Reliable Ambulance Serv., Inc. v. Mercy Hosp.*, No. 4-02-188-CV, 2003 WL 2197224 *3 (Tex. App. — San Antonio Aug. 20, 2003, pet. den.) (citing 42 U.S.C. § 1320a-7b(b)). Such violations, argues PPD, satisfy

the "independently tortious or unlawful" element of its tortious interference claim. Defendants argue that there is no precedent for incorporating the federal Anti-Kickback Statute into a state law tortious interference claim.

In a diversity action such as this, Texas substantive law governs. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). To determine state law, federal courts look to the final decisions of the state's highest court. *Transcon Gas Pipe Line Corp. v. Transp. Ins. Co.,* 953 F.2d 985, 988 (5th Cir. 1992). In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the state's highest court would decide the issue presented. *American Int'l Specialty Lines Ins. Co. v. Canal Indemnity Co.,* 352 F.3d 254, 260 (5th Cir. 2003).

Although no Texas court has yet confronted the precise question here — whether a violation of the federal Anti-Kickback Statute may serve as a predicate for a tortious interference with prospective business relations claim — the Texas Supreme Court has provided sufficient general guidance to confidently predict the answer is "No." In *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001), the Court wrote at length to clarify just what the phrase "independently tortious or wrongful" means in the context of tortious interference with prospective business relations. After examining the history of the tort at common law, and surveying the few Texas cases in which plaintiffs recovered damages under this cause of action, the Court concluded that the scope of culpable conduct was fairly limited:

It appears that in most Texas cases in which plaintiffs have actually recovered damages for tortious interference with prospective business relations, the defendants' conduct was either independently tortious—in the four cases noted, defamatory or fraudulent—or in violation of *state* law. . . [W]e see no need for a definition of tortious interference with prospective business relations that would encompass other conduct.

*Id.* at 726 (emphasis added). The *Sturgis* Court further observed that "the historical limitation of the tort to unlawful conduct — 'the actor's conduct was characterized by violence, fraud or defamation and was tortious in character'[4] — provides a viable definition and preserves the tort's utility of filling a gap in affording compensation in situations where a wrong has been done." *Id.* Expanding the scope of potential liability under this tort to violations of federal law would contravene both the letter and the spirit of this holding by the Texas Supreme Court.

This conclusion is reinforced by the opinion of an intermediate Texas appeals court in *Reliable Ambulance Serv., Inc. v. Mercy Hosp.*, No. 4-02-188-CV, 2003 WL 2197224 *2 (Tex. App. — San Antonio Aug. 20, 2003, pet. den.). The plaintiff argued that a competitor's violation of the federal Anti-Kickback Statute may properly be alleged as the sole basis of a Texas common law claim for unfair competition. The court rejected the claim, and while the case did not specifically involve a tortious interference claim, the court's analysis is instructive. After carefully examining the federal statute and its legislative history, the court found that Congress had actively developed a comprehensive bifurcated civil and criminal scheme for addressing fraudulent and abusive payment

---

[4] Restatement (Second) of Torts § 766B, cmt. B (1979).

practices in federal health care programs. As part of this scheme, the Secretary of Health and Human Services has issued "complex, detailed regulations" setting out 22 safe harbors for certain practices, and separate civil mechanisms were created to assist HHS in redressing Anti-Kickback Statute violations. *Id.* at *4. In light of this, the court concluded that "recognizing a common law cause of action by a competitor for damages and injunctive relief for violation of the anti-kickback statute would be inconsistent with the intent of Congress." *Id.* at *6. The logic of *Reliable* is consistent with the instruction of *Sturgis* that success on a claim of tortious interference with prospective business relations requires proof of a violation of state law, rather than federal law.[5]

This interpretation of Texas law is in harmony with other states recognizing the tort of interference with prospective business relations. As the Eleventh Circuit recently observed in *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518 (11th Cir. 2015),[6] there is no state court precedent incorporating the Anti-Kickback Statute as a predicate for a common law tortious interference claim. *Id.* at 533-34. For all these reasons, the court concludes that violation of the federal Anti-Kickback Statute would not satisfy the third element of a tortious interference with prospective business relations tort claim.

Alternatively, PPD alleges that defendants' actions also violate Texas law. Specifically, PPD claims that defendants' payments to Freedhand violate the Texas Occupation Code (regarding solicitation of patients), Sections 32.3, 36.02, 36.07, 36.08,

---

[5] *See also Synthes v. Globus Med., Inc.*, No. Civ. A. 04-CV-1235, 2005 WL 2233441 *6 (E.D. Pa. Sept. 14, 2005) ("The mere fact that the Anti-Kickback provision prohibits Synthes' conduct does not mean that the same conduct cannot provide a basis for civil liability under another state or federal statute. The question then is whether the underlying conduct violates Pennsylvania state law.").

[6] The ultimate holding of the *Ameritox* case is only that a state law claim of tortious interference based on a Stark or Anti-Kickback Statute violation presents a novel and complex issue of state law. 803 F.3d at 536-37. Nonetheless, as with *Reliable*, the court's reasoning is instructive and persuasive.

and 36.09 of the Texas Penal Code (regarding bribery), and Section 572.051 of the Texas Government Code (regarding conduct by state officers or employees). Dkt. 124 at 5. These allegations cannot save PPD's tortious interference with prospective business relationships claim. All these statutory violations are based on wrongdoing by Dr. Freedhand.[7] But Freedhand is not a defendant in this case, and in any event a person cannot interfere with his own relationships.[8] *American Medical Int'l, Inc. v. Giurintana*, 821 S.W.2d 331, 335 (Tex. App. — Houston [14th Dist.] 1991, no pet.).

The court concludes that defendants' are entitled to summary judgment on PPD's tortious interference with prospective business relationships claim because there is no evidence that defendants' actions were independently tortious or otherwise violate state law.[9]

## Conclusion

---

[7] PPD's briefing is conclusory as to these alleged state law violations. Other than arguing that Freedhand is a state employee for purposes of Government Code Section 572.051 and Penal Code Section 36.02, PPD does not offer evidence or argument as to the nature such violations.

[8] This point is also fatal to PPD's claim based on violations of the Stark Laws.

[9] The evidence shows that beginning in mid-2013, Stryker's payments to Freedhand increased, and Freedhand's use of Corin products sold by PPD declined. Dkt. 170-12;170-6 at 8. In May 2013, before PPD and MAKO entered the Sales Agreement, Stryker representatives discussed giving Freedhand "a corporate bear hug" to keep his business, Dkt. 170-7 at 1, and in March 2014, approximately 6 months before the Sales Agreement was terminated, Freedhand told Domingues he wanted to be Stryker's "top dog," Dkt. 170-2 at 8-9. Interestingly, during at least part of the time that Stryker made these increased payments to Freedhand, *i.e.* in late summer 2013 through early fall 2014, PPD was the distributor for MAKO products and thus benefiting from the relationship. There is also some evidence that PPD was told that Corin products were not allowed at The Woodlands Memorial Hermann campus per instructions from Stryker Dkt. 147-7 at 2.

Defendants' objections to this evidence are overruled for current purposes. Whether or not this evidence would be sufficient to create a fact issue as to whether defendants' conduct violated the Anti-Kickback Statute or as to the other elements of a tortious interference with prospective business relationships claim is an open question.

Defendants' motion for summary judgment on PPD's tortious interference with prospective business relationships claim is granted. PPD's breach of contract claim remains set for jury trial commencing January 29, 2018.

Signed at Houston, Texas, on November 1, 2017.

Stephen Wm Smith
United States Magistrate Judge